Rosa Fuentes, demandante y recurrente, *v.* Hull Dobbs Company of Puerto Rico, y Universal C.I.T. Credit Corporation of Puerto Rico, demandadas y recurridas.

*Número*: 12884        *Resuelto*: 18 de junio de 1963

*Jorge Benítez Gautier* y *Luis F. Cuyar,* abogados del recurrente; *B. Sánchez Castaño, R. Rivero Cervera* y *Ana Rita Rodríguez,* abogados de las recurridas.

Sala integrada por el Juez Asociado Señor Blanco Lugo como Presidente Accidental de Sala y los Jueces Asociados Señores Dávila y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El recurrente Rosa Fuentes inició acción contra las recurridas Hull Dobbs Company of Puerto Rico (en lo sucesivo designada Hull Dobbs) y Universal C.I.T. Corporation (en lo sucesivo designada C.I.T.), en rescisión de un contrato por virtud del cual el recurrente compró a Hull Dobbs un camión Ford por la suma de $5,792.00. Dicho camión resultó tener neumáticos defectuosos que Hull Dobbs se negó a sustituirlas por otras en buenas condiciones de funcionamiento a pesar de las gestiones al efecto realizadas por el recurrente. Solicitó éste, en tal virtud, la devolución del valor en que se le tomó su vehículo usado, o sea la suma de $2,307, más $1,000 por pérdida de uso del camión antes mencionado. Como segunda causa de acción, alega el recurrente que al insistir en que Hull Dobbs cumpliera su referida obligación contractual, fue maltratado de palabra por un Sr. Marín, ejecutivo de Hull Dobbs, y echado de la oficina de éste, lo que le ha causado honda humillación y vergüenza y le ha perjudicado en su posición en la comunidad, estimando sus daños por tal motivo, en $3,000.

Visto el caso, el tribunal de instancia declaró la demanda sin lugar. En sus Conclusiones de Hecho determinó que se había llevado a efecto la referida compraventa del camión bajo contrato de venta condicional cedida luego a C.I.T. y ejecutado por ésta embargando el camión cuando Rosa Fuentes no pagó con puntualidad los plazos convenidos; que el camión se entregó con gomas sin tubo y como parte del negocio Hull Dobbs garantizó servicio gratuito por 90 días o durante las primeras 4000 millas que corriera el vehículo y las partes convinieron que Hull Dobbs no se haría responsable de desperfectos en los neumáticos; que el camión se encuentra en los talleres de Hull Dobbs; que mediante inspección ocular al efecto el juez sentenciador "se percató que los neumáticos se encontraban en buen estado . . ." y que "El vehículo tenía rota la sopanda delantera, y presentaba levantaduras en la plataforma denotando que fue sobrecargado." Dictaminó el tribunal de instancia en cuanto a la segunda causa de acción que "Asimismo entiende que no hubieron [*sic*] actos temerarios, desenfrenados y maliciosos por parte de empleados de la co-demandada Hull Dobbs Co." Con respecto a C.I.T., resolvió que el recurrente "se allanó en corte abierta a que se declarase con lugar la reposición iniciada, y consecuentemente el Tribunal dictará la orden de restitución del camión en dicho caso."

No conforme, el recurrente acudió ante nos en solicitud de revisión que concedimos. Señala que el tribunal de instancia incurrió en seis errores de hecho y de derecho al resolver, en síntesis, que:

A.—Hull Dobbs no se hacía responsable de los neumáticos; que el camión se encontraba en los talleres de Hull Dobbs en las mismas condiciones en que se encontraba cuando se embargó; que fue sobrecargado; que los neumáticos estaban en buen estado.

B.—que no existían vicios ocultos en la cosa vendida.

C.—no hubo actos temerarios, desenfrenados y maliciosos por parte de Hull Dobbs.

Por estar íntimamente relacionados entre sí discutiremos los dos primeros apuntamientos conjuntamente. A los efectos de resolver ha sido necesario realizar un cuidadoso análisis de la prueba que puede resumirse así:

El día anterior a la fecha del contrato el recurrente recibió el vehículo nuevo en el establecimiento de Hull Dobbs, en la carretera Brugal. Al salir de allí observó que uno de los neumáticos del camión estaba casi vacío condición que se llevó a la atención de un empleado de Hull Dobbs; que fue inmediatamente llenado en un cercano puesto de gasolina. Al día siguiente el mismo neumático amaneció vacío. Volvió el recurrente a Hull Dobbs donde localizó al empleado que le vendió el camión, de nombre Martínez, "a declarar la goma defectuosa" y para que se le cambiase, pero éste le contestó que debió alegarlo el día anterior, "Que ya no tenía derecho"; lo refirió al jefe principal de los vendedores de apellido Marín, en la oficina de Hull Dobbs en Puerta de Tierra a donde fue el recurrente con una nota de Martínez. Pero Marín le contestó "que no podía hacer nada porque él no había vendido aquel truck"; volvió a donde Martínez y éste contestó "que él tampoco podía hacer nada." Entonces el recurrente sustituyó el neumático de repuesto por el defectuoso; se llevó el camión a arreglar la caja; a los tres días al irlo a recoger encontró los neumáticos vacíos; los volvió a llenar pero en los días subsiguientes se vaciaban continuamente al extremo que al finalizar una semana determinó que el camión era un "problema". Entonces volvió a la oficina de Hull Dobbs en Brugal y le explicó a Martínez lo que ocurría con las gomas. Éste lo refirió a Diego Agüeros en San Juan, quien era el representante de los neumáticos pero éste lo refirió a un señor González, en la parada 7 en la agencia de los neumáticos General. Este último le dijo que no podía darle servicio porque no le había vendido el *truck* "y menos esas gomas y que él

no tenía esa clase de gomas. Que no las traía a Puerto Rico porque no se vendían." Pero González la acompañó a ver a Marín en la oficina de Hull Dobbs en Puerta de Tierra y aquél le dijo a éste "que esa clase de problema no se lo mandara a él porque él no podía asumir esa responsabilidad." Al retirarse González, Marín trato de convencer al recurrente que los neumáticos eran buenos, que se llevara el *truck* "y lo chequeara en cualquier puesto de gasolina, que eso lo sabe arreglar todo el mundo". Contestó el recurrente que ya él había tratado eso y sugirió dejarle el camión a Marín para que éste lo enviase a arreglar y le avisase cuando el camión estuviese en condiciones de trabajar para él volver a recogerlo. Al instante Marín le profirió una serie de palabras hirientes y obscenas y le dijo al recurrente en forma violenta "Lárguese de aquí lo antes posible que ya me tiene molesto con el problema de las gomas." Al negarse el recurrente, Marín se sentó y se volvió a parar de la silla y le empujó el escritorio encima al recurrente. El testigo Montalvo, quien presenció este incidente junto con muchas otras personas allí presentes, declaró que oyó las frases indecentes de Marín; que éste empujó al recurrente y entonces Montalvo se interpuso entre ambos y le dijo a Marín "no hagas eso, que usted da por dos hombres como ese. No lo atropelle así que eso es un abuso." El recurrente volvió entonces donde González de la agencia de los neumáticos General. Al día siguiente el recurrente le sacó al camión los cuatro neumáticos vacíos y los llevó a Hull Dobbs en la avenida San Agustín. El jefe del taller allí, señor Shindledecker, le dio una carta para la oficina de la General Tire en Puerta de Tierra, dirigida al referido González, pero éste le contestó que por tercera vez tenía que decirle que él nada podía hacer; que viera un abogado. Declaró finalmente el recurrente que Hull Dobbs nunca atendió su reclamación.

Como el recurrente no pagó el primer plazo de la venta condicional del camión, C.I.T. inició un proceso de reposesión

del mismo. Cuando el alguacil se llevó el camión por virtud del correspondiente embargo las gomas estaban casi todas vacías. El recurrente, tanto en su declaración en examen directo como en contrainterrogatorio dijo no conocer del tipo de neumático que motivó la causa ni ser perito en esa cuestión. En cuanto a la póliza de garantía de servicios declaró el recurrente en contrainterrogatorio que no le dieron el documento, pero que le hablaron de que el camión tenía garantía por tres meses. ([1]) La declaración del testigo Luis Rondón Llopis, conductor del camión en cuestión, corrobora sustancialmente la del recurrente con respecto a las dificultades habidas con los neumáticos del camión y con respecto a las distintas gestiones que ambos realizaron con distintos empleados y en distintas oficinas de Hull Dobbs y de Diego Agüeros y General Tire. Negó fuesen alguna vez a la corporación Firestone o haber visto carta alguna de Hull Dobbs relacionada con un posible arreglo de la controversia con respecto a los neumáticos. Negó que el camión llevase carga excesiva. Tanto este testigo como el recurrente declararon y afirmaron que el defecto de las gomas hacía el camión impropio para el uso a que se destinaba. El testigo Lancaster, gerente de Hull Dobbs, admitió que tenía quejas anteriores con respecto a neumáticos, pero que la Compañía Ford no garantizaba los neumáticos—no sabe por qué—; que la garantía de servicio excluyendo los neumáticos va con el contrato de venta. En contestación a la carta del abogado del recurrente presentando la reclamación de éste (Exh. 3 del demandante) el testigo contestó por carta (Exh. 4 del demandante) que la garantía de servicio dada al recurrente excluía los neumáticos; que Shindledecker, del departamento de servicio de Hull Dobbs le había dado una carta al recurrente para la corporación Firestone a donde le informaron que el reajuste que se ofrecía implicaba pago por el recurrente por el tiempo y millaje de los neumáticos

---

([1]) Aunque se identificó el referido documento de garantía no se ofreció en evidencia.

usados y que estaba sobrecargando el camión, recomendándole pagase la diferencia y uso de neumáticos de doce lonas (a lo que se negó), volviendo el recurrente a la oficina de Hull Dobbs a amenazar con daño corporal a Marín quien le dijo que se fuese; por último sugería Lancaster que el recurrente y su abogado fuesen a la oficina del primero para él enviarlos con alguien a la compañía de los neumáticos para que el abogado viese el reajuste que se había ofrecido. El testigo Shindledecker declaró que primero mandó al recurrente con una carta (Exh. 2 del demandante) donde la empresa General Tire para que le hiciesen un reajuste en los neumáticos; que entonces consultó a Lancaster y le informaron que la casa Firestone se haría cargo de las quejas sobre neumáticos; que Fuentes fue a verlo poco después y él lo envió con una carta a la Firestone; que el representante de esta compañía le dijo por teléfono que Fuentes reclamaba un neumático de otra clase y parecía que estaba sobrecargando el camión. Dijo no tener copia de la referida carta a Firestone, pero que podía encontrar copia de la carta dirigida por él a General Tire. El recurrente negó haber recibido carta dirigida a la corporación Firestone de algún funcionario de Hull Dobbs y que nunca lo mandaron allí.

■ Es evidente de la prueba presentada que la referida garantía de servicio no formaba parte del contrato de venta celebrado por el recurrente con Hull Dobbs, pues éste dispone que "el comprador, mediante su firma abajo, manifiesta y asegura que al firmar el contrato que antecede el mismo contenía todo lo convenido por las partes y estaba completo; y confiesa que le ha sido entregada una copia fiel de dicho contrato." Al dorso dicho contrato dispone que: "Ningún convenio, representación o garantía será obligatoria para el tenedor a menos que esté expresamente contenido en este contrato." El récord demuestra que dicha garantía no se unió como parte de dicho contrato ni se hizo en él referencia específica a la misma. Es más, dicha garantía no fue ofrecida en

evidencia; la copia de la misma que se identificó por sus propios términos no era válida y efectiva y no se probó que la referencia que se hizo a la exclusión de los neumáticos de la garantía fuese llevada a la atención del recurrente en forma alguna y mucho menos como condición esencial del contrato de venta.

La prueba demostró, amplia e indubitablemente, que los neumáticos del camión en cuestión estaban defectuosos cuando el vehículo fue entregado al recurrente no tan sólo por la declaración no controvertida de éste y el testigo Rondón sino que el propio Lancaster, gerente de la Hull Dobbs, admitió que tenían quejas sobre neumáticos y que conoció de la del recurrente al extremo que trataron de encontrarle la solución, improcedente, de reajuste por conducto de tres agencias locales de fabricantes de neumáticos. Es después que el recurrente refiere su reclamación a un letrado que Hull Dobbs viene a alegar que la dificultad habida con los neumáticos se debe a que el camión ha sido sobrecargado, basándose esto, no en un examen del vehículo por la propia Hull Dobbs cuando surgió la queja de los neumáticos, sino en una información que dice Shindledecker, un empleado de Hull Dobbs, que le dio por teléfono un empleado de la agencia local de la corporación Firestone a donde Shindledecker dice que refirió al recurrente con una carta, de la cual declaró que no tiene copia, referencia y carta que específica y categóricamente negó el recurrente. Concluimos, por lo tanto, que este cuadro de viva realidad no ha sido ni puede ser controvertido por las conclusiones del juez sentenciador basadas en una inspección ocular del vehículo, hecha seis meses después de reposeído el vehículo y de estar todo ese tiempo en la posesión de Hull Dobbs, de la cual concluye sin más ni más "que las gomas del camión estaban en buen estado" y que "El vehículo tenía rota la sopanda delantera y presentaba levantaduras en la plataforma, denotando que fue sobrecargado." No se presentó prueba pericial alguna en el récord que sustancie

tales conclusiones. Los neumáticos en cuestión eran de nuevo diseño, "sin tubos", de reciente creación y por tanto poco conocidos en Puerto Rico para la fecha en que Rosa Fuentes compró el camión en cuestión y ciertamente no conocidos por el recurrente. No tenemos duda que siendo los neumáticos un equipo esencial del camión, el desperfecto de los mismos que surge de la prueba en este caso constituía un vicio oculto del camión al momento de su venta.

Se trata, pues, de un caso claro de una cosa vendida con vicio oculto que la hace impropia para el trabajo, que no era un defecto manifiesto ni a la vista y el cual el comprador, por no saber del tipo de neumáticos en cuestión ya que eran nuevos para él, y por no ser perito en la materia, no pudo fácilmente conocer. La propia declaración de Lancaster, gerente de Hull Dobbs, indica que ésta conocía del defecto o vicio oculto en cuestión. En tal virtud, el recurrente al entablar su acción en este caso optó por desistir del referido contrato de compraventa del camión y propiamente reclamó daños y perjuicios (31 L.P.R.A. secs. 3801, 3831, 3841, 3842 y 3843). *D'Azizi* v. *Alcaraz*, 40 D.P.R. 489 (1930); *Marrero* v. *Garage Mayagüez, Inc.*, 31 D.P.R. 908 (1923).

En cuanto a la pérdida sufrida por falta de uso del camión, declaró el recurrente que un camión que anteriormente usaba promediaba unos $680 mensuales de ingreso bruto a lo que había que restarle $239 de los pagos del camión, sueldo del empleado de unos $150 a $160 y la gasolina y aceite, como $68 mensuales de promedio, de manera que tenía una ganancia neta de $150. El truck no llegó a trabajar una semana completa. Tan pronto el recurrente dejó de pagar el primer plazo bajo el contrato de venta condicional, la C.I.T. inició en su contra un procedimiento de reposesión a virtud del cual embargó el camión en cuestión en agosto 10 de 1956. El recurrente, por lo tanto, probó que sus daños consistían de una ganancia mensual neta que promediaba unos $150, pero a esto debe añadirse la suma de $239.46 de los pagos

mensuales de financiamiento que a los efectos de determinar los daños en este caso impropiamente se dedujeron del ingreso bruto promedio mensual derivado por el recurrente de la operación del camión que anteriormente usaba. De manera que la cuantía de los daños debe calcularse a razón de $389.46 mensuales. El recurrente tomó posesión del camión en 13 de junio de 1956, lo pudo trabajar una semana, de manera que tuvo posesión del mismo sin poderlo usar desde el 20 de junio de 1956 hasta el 20 de agosto de 1956 en que la C.I.T. embargó el mismo, o sea dos meses. Concluimos, por lo tanto, que la cuantía de los daños sufridos por el recurrente de acuerdo con las disposiciones del Art. 1375 del Código Civil (31 L.P.R.A. sec. 3843) es la suma de $778.92.

Desde el momento en que el recurrente optó por desistir del contrato, o sea desde la fecha de la demanda en este caso, que es el día 25 de julio de 1956, surgió la obligación de Hull Dobbs de devolver al recurrente la suma de $2,307 pagada por éste y acreditada por Hull Dobbs al pago del camión en cuestión y al no hacerlo, incurrió ésta en mora. Con tal motivo se justifica conceder como parte adicional de los daños sufridos por el recurrente intereses sobre dicha cantidad a razón del 6% por año desde dicha fecha hasta su reembolso total (31 L.P.R.A. sec. 3025). De acuerdo con lo dispuesto en la Regla 44.3 de las Reglas de Procedimiento Civil en vigor, pueden concederse daños justificados en un caso como éste, consistentes en los referidos intereses, aunque no hayan sido solicitados en la demanda. En vista de lo expuesto concluimos además que la actuación de la recurrida al defenderse en este caso es de manifiesta temeridad.

Debemos confirmar la sentencia en cuanto a la segunda causa de acción (apuntamiento C anterior). Aun en el caso de que el juez sentenciador hubiese determinado que el empleado de Hull Dobbs profirió las palabras ofensivas de que se queja el recurrente y hubiese echado al recurrente de su oficina, su actuación no constituyó calumnia *per se*, pues se

llevó a cabo en un arrebato de exaltación y pasión, *Moraza v. Rexach Sporting Corp.*, 68 D.P.R. 468 (1948), y además, no tendían a perjudicar a Fuentes en su negocio, pues no hacían referencia a cosa alguna relacionada con el mismo o a las atribuciones personales del recurrente en las gestiones de su negocio, tales como falta de integridad y honradez, Newell, *Slander & Libel*, secs. 150, 154; cf. *González v. Ramírez Cuerda*, 88 D.P.R. 125 (1963); *Bosch v. Editorial El Imparcial, Inc.*, 87 D.P.R. 285 (1963).

*Por las razones indicadas se revoca la sentencia en cuanto a la primera causa de acción y, en tal virtud, se condena a la recurrida Hull Dobbs Company of Puerto Rico (1) a pagar al recurrente la suma de $778.93 por concepto de daños y perjuicios, (2) a reembolsar al recurrente la cantidad de $2,307 más intereses sobre la misma desde el 25 de julio de 1956 a razón del 6% por año hasta su completo pago, más las costas incluyendo las incurridas en el presente recurso, y $1,000 de honorarios de abogado. Se confirmará la sentencia en cuanto a la segunda causa de acción.*