Rodríguez de Oronoz, Jueza Ponente
TEXTO COMPLETO DE LA SENTENCIA
Se nos solicita la revisión de una sentencia parcial enmendada nunc pro tunc y una orden, ambas emitidas por el Tribunal de Primera Instancia, Sala Superior de San Juan el 16 de junio de 2003. Mediante la sentencia parcial se enmendó el término para computar los intereses por mora y la cantidad a pagar por ese concepto. Por medio de la orden apelada se determinó que la Secretaría del Tribunal expediría un cheque a la parte demandante, Omega Engineering, S.E., por la suma consignada de $166,407.72 y que la parte demandada Royal Insurance Company of Puerto Rico adeudaba a la parte demandante la suma adicional de $22,648.25 en intereses por mora.
Examinados en su totalidad los autos del caso y el derecho aplicable, resolvemos revocar la sentencia y la *1093 orden apelada.
I
El 26 de septiembre de 1995, el Departamento de Corrección (“Corrección”) y Prudential Builders S.E. {“Prudential”) celebraron un contrato de construcción para un proyecto conocido como “Ponce Minimum Custody and Classification Center”. El 8 de noviembre de 1995, Prudential subcontrató parte de dicho proyecto con Omega Engineering, S.E. (“Omega”). El 29 de julio de 1996 se detuvo los trabajos en el proyecto por orden del dueño de la obra, Corrección. Posteriormente, Omega le requirió el pago de varias partidas a Prudential y ésta pagó algunas y otras no.
El 12 de mayo de 1999, Omega presentó demanda en cobro de dinero contra Prudential y Royal Insurance Company of Puerto Rico, Inc. (“Royal”), la cual había emitido una fianza de ejecución (“Performance Bond”), a favor de Prudential. Omega alegó que era subcontratista de Prudential y que ésta le debía la cantidad de $446,316.73.
El 21 de junio de 2002, Omega presentó una “Moción Solicitando Liquidación de Suma Admitida e Incontrovertida y Señalamiento de Juicio Sobre Dos Controversias Restantes” en la que identificó los asuntos pendientes como sigue: (1) la liquidación o pago final del balance adeudado por la fiadora Royal bajo el subcontrato entre Omega y la afianzada Prudential; (2) el pago a Omega de cierto material en sitio (“material on site”); y (3) el pago a Omega de dos (2) furgones entregados al dueño de la obra. Alegó que en una resolución del 6 de junio de 2002, el tribunal fijó la liquidación o pago final del balance adeudado bajo el subcontrato en la cantidad de $120,149.98. Adujo que dicha suma fue aceptada por Prudential, según surgía de la defensa afirmativa número 4 de la Contestación a la Demanda de Prudential de 10 de julio de 1999 y de la carta del 25 de marzo de 1999 suscrita por el Ledo. Luis E. Gervitz (abogado de Prudential) y dirigida al Ledo. Jorge Maldonado (abogado de Omega). Solicitó que el tribunal le ordenara a Royal pagar a Omega la suma de $120,149.98 más intereses, por ser ese el balance incontrovertido, líquido y exigible adeudado bajo el subcontrato. El 11 de octubre de 2002, Omega presentó una moción nuevamente solicitando que Royal procediera a pagarle la suma de $120,149.98 más intereses al 6% anual computados desde el 29 de julio de 1996. El 18 de octubre de 2002, el tribunal de instancia emitió la siguiente orden:

"PROCEDA LA DEMANDADA ROYAL INS. CO. CON LO REQUERIDO EN ESTE ESCRITO EN UN TERMINO DE 10 DIAS, APERCIBIDO DE SANCIONES, DE NO HACERLO. ”

El 12 de febrero de 2002, el tribunal de instancia notificó una “Sentencia Parcial y Orden” emitida el 30 de enero de 2003, mediante la cual le ordenó a Royal pagar a Omega la suma principal de $120.149.98, más la suma de $46,257.74 en intereses, computados desde el día 29 de julio de 1996, para un total de $166,407.72.
La oportuna moción de reconsideración presentada por Royal fue acogida por el tribunal mediante orden del 4 de marzo de 2003. Luego, el 26 de febrero de 2003, Royal presentó una moción de consignación informando que, aunque estaba consignando la cantidad de $166,407.72, no renunciaba a su moción de reconsideración en la cual aceptaba como correcta la cantidad principal adeudada de $120,149.98, pero objetaba el cálculo de los intereses concedidos en la sentencia del 30 de enero de 2003.
Estando pendiente la moción de reconsideración de Royal, Omega presentó una “Urgente Oposición a Reconsideración, Solicitud de Enmienda ‘Nunc Pro Tunc’ a Sentencia Parcial y Orden y Para el Retiro de Fondos”. Royal presentó su oposición el 28 de marzo de 2003 y Omega presentó una Dúplica el 4 de abril de 2003.
El 16 de junio de 2003, el tribunal de instancia notificó una orden emitida el 9 de junio de 2003 en la cual denegó la moción de reconsideración de Royal, declaró con lugar la solicitud de enmienda nunc pro tune de *1094 Omega, y le ordenó a Royal a pagar $22,648.25, adicionales a la suma consignada de $166,407.72. En esa misma fecha, el tribunal emitió una sentencia parcial y orden enmendada nunc pro tune, condenando a Royal a pagarle a Omega “la suma principal de $120,149.98, más $68,905.99 en intereses computados al 5.25% anual desde el 29 de julio de 1996, fecha en que terminaron los trabajos y toda obligación de Omega en el proyecto ‘Ponce Minimum Custody and Classification Center’ mediante orden de la codemandada Prudential Builders, S.E., según dispone el Artículo 1053 del Código Civil vigente, al 21 de febrero de 2003, incrementando diariamente a razón de $17.28 a la tasa actual de 5.25'A hasta su total pago.”
Inconforme, el 15 de julio de 2003, Royal presentó escrito de apelación ante este Tribunal y señaló los siguientes errores:

“El Honorable Tribunal cometió error al determinar que los intereses sobre la deuda de $120,149.98 se empezaban a calcular desde el 29 de julio de 1996.

El Honorable Tribunal cometió error al calcular el por ciento de los intereses y el monto de los mismos. ”

II
En nuestro ordenamiento jurídico, “[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes y deben cumplirse al tenor de los mismos. ” Artículo 1044 del Código Civil, 31 L.P.R.A. § 2994. Así también, los contratantes pueden establecer las condiciones que tengan por conveniente, siempre que no sean contrarias a las leyes, a la moral o al orden público. 31 L.P.R.A. § 3372. Según el Artículo 1206 de nuestro Código Civil, 31 L.P.R.A. § 3371, “[e]l contrato existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio. ” Una vez es perfeccionado el contrato, éste obliga tanto al cumplimiento de lo expresamente pactado, como a todas las consecuencias que sean conformes con la buena fe, el uso y la ley. Artículo 1210 del Código Civil, 31 L.P.R.A. § 3375; Ramírez v. Club Cala de Palmas, 123 D.P.R. 347, 348 (1989). Es principio reiterado que si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, regirá el sentido literal de sus cláusulas. 31 L.P.R.A. § 3471; CNA Casualty of P.R. v. Torres Díaz, 141 D.P.R. 27 (1996). La jurisprudencia estima por términos claros aquellos que por sí mismos son bastante lúcidos para ser entendidos en un único sentido, sin dar lugar a dudas, controversias ni diversidad de interpretaciones y sin necesitar para su comprensión, razonamientos o demostraciones susceptibles de impugnación. Sucn. Ramírez v. Tribunal Superior, 81 D.P.R. 357 (1959).
Por otro lado, sabemos que la mora es “el retardo en el cumplimiento de la obligación imputable al deudor, válidamente comprobado por un acto del acreedor.” Guaroa Velázquez, Las Obligaciones Según el Derecho Puertorriqueño, Equity Publishing, pág. 154, 1964. El Código Civil de Puerto Rico establece en su Artículo 1053, 31 L.P.R.A. §3017, que:

“Incurren en mora los obligados a entregar alguna cosa desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento de su obligación.

No será, sin embargo, necesaria la intimación del acreedor para que la mora exista:

(1) Cuando la obligación o la ley lo declaren así expresamente.

(2) Cuando de su naturaleza y circunstancias resulte que la designación de la época en que había de entregarse la cosa o hacerse el servicio, fue motivo determinante para establecer la obligación.

En las obligaciones recíprocas, ninguno de los obligados incurre en mora si el otro no cumple o no se allana a cumplir debidamente lo que le incumbe. Desde que uno de los obligados cumple su obligación, empieza la mora para el otro. ”

*1095 El Profesor Guaroa Velázquez expresa que las condiciones para que la mora exista pueden reducirse a tres:

“Primera. Que la obligación esté vencida y líquida. Vencida, pues mientras no llega el día de ser ésta exigible, el deudor no falta a sus deberes ni está sujeto a responsabilidad por razón del retraso. Líquida, pues donde no hay certeza de la deuda, donde no se sabe lo que es preciso hacer o lo que se necesita entregar, falta el elemento de la culpa en el retraso del deudor.

Segunda. Que el deudor retarde el cumplimiento de la obligación. Este retardo debe ser injusto, o sea imputable. Dice al efecto Valverde: ‘si se mostrase que el retardo habría ocurrido no obstante la diligencia debida del deudor, la mora en realidad no existe y no origina responsabilidad’.

Tercera. Que el acreedor le requiera al deudor el pago judicial o extrajudicialmente. Pues en tanto no se exija el pago, el deudor, aun en retardo de ejecutar, no está en falta. Ahora bien, el Código no señala forma de hacerse dicho requerimiento; de aquí que la intimación extrajudicial, verbal o escrita, con tal de que se pruebe haberse exigido la deuda, es operante.” Guaroa Velázquez, supra, pág. 155.
Por su parte, Albaladejo explica que para que el deudor incurra en mora hace falta que el acreedor le reclame. Se tiene que tratar de una verdadera exigencia de pago; no basta un mero recordatorio que el acreedor le dirija al deudor. El Código Civil admite todo tipo de reclamación, judicial o extrajudicial, sin exigir forma de realizarla. La reclamación debe tener lugar después del vencimiento de la obligación. Además, debe de referirse a la prestación debida y, si se exige otra, no sirve para hacer incurrir en mora. Según la jurisprudencia española, tampoco sirve la reclamación de una cantidad mayor que la debida. La reclamación tiene que llegar a conocimiento del deudor para que se perfeccione. Entiende Albaladejo que ese sentido lo admite la expresión “que el acreedor les exija judicial o extrajudicialmente”, del Artículo 1100 del Código Civil Español (equivale al Art. 1053 de nuestro Código Civil), “pues en el exigir que la ley piensa es en el del acreedor frente al deudor, y en tanto en cuanto éste conozca (o haya debido conocer) la exigencia de aquél”. Por ello, cuando la reclamación se realiza demandado en juicio al deudor para que pague, la mora debe comenzar, no cuando el acreedor interponga la demanda, sino cuando ésta es notificada a aquél. Albaladejo García, Manuel, Comentarios al Código Civil y Compilaciones Forales, Madrid, 1989, Vol. 1, T. XV, pág. 360 et seq.
Los daños y perjuicios a que tiene derecho un acreedor que ha sido afectado por la morosidad de su deudor, son determinados por el Artículo 1061 del Código Civil, 31 L.P.R.A. §§ 3025, que señala:

“Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal.

Mientras no se fije otro por el Gobierno, se considerará como legal el interés del seis por ciento (-6%) al año. ”

Por su parte, la Regla 44.3(a) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 44.3(a), estatuye como interés legal el tipo fijado periódicamente por la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras que esté en vigor al momento de dictarse la sentencia.
Los intereses por mora no constituyen parte integrante e inherentemente inseparable de la obligación principal, sino que son considerados como una indemnización independiente de daños y perjuicios, impuesta como penalidad por la demora en el pago. Rivera v. Crescioni, 77 D.P.R. 47, 55-56 (1954). El Tribunal Supremo expresamente ha resuelto que cuando una parte en un contrato ha incurrido en mora, un tribunal puede conceder intereses por mora sobre la cantidad adeudada, aun cuando dichos intereses no hayan sido solicitados en la demanda. Fuentes v. Hull Dobbs Co., 88 D.P.R. 562, 571 (1963).
*1096 III
Discutiremos los errores señalados en conjunto por estar los mismos íntimamente relacionados.
Royal alega que los intereses por mora deben ser calculados desde el 25 de marzo de 1999, fecha en que su afianzada Prudential admitió la deuda de $120,149.98 y no desde la fecha en que se detuvo el proyecto, 29 de julio de 1996. También argumenta que el tribunal de instancia erró al calcular el por ciento de los intereses por mora y el monto de los mismos.
Luego de examinar los alegatos de las partes y sus apéndices, encontramos que Omega le reclamó extrajudicialmente a Prudential el pago de lo debido bajo el convenio de subcontrato desde la fecha en que se detuvo el proyecto, 29 de julio de T996r~Nü obstante, de acuerdo al convenio de subcontrato entre Omega y Prudential y al contrato de construcción entre Prudential y Corrección, a esa fecha la obligación no estaba vencida ni era líquida.
En la Sección B-l de las condiciones generales contenidas en el convenio de subcontrato se pactó que los documentos del contrato general se incorporaban por referencia al convenio de subcontrato. (Véase, Apéndice, pág. 124). En la Sección E-l se acordó que tanto los pagos parciales como el pago final se harían siguiendo los criterios y procedimientos y sujeto a las mismas retenciones provistas en el contrato de construcción para los pagos parciales y finales que el dueño de la obra haría al contratista. (Véase, Apéndice, pág. 127). La forma de pago se convino en la Sección E-4 de las condiciones generales disponiéndose, que luego de completar su trabajo y cumplir con todas sus obligaciones bajo el convenio de subcontrato, el subcontratista le sometería al contratista una solicitud para pago final, cuyo pago final sería por todas las sumas debidas al subcontratista bajo el convenio de subcontrato y que no hubieran sido pagadas previamente. (Véase, Apéndice, pág. 129).
Por otro lado, en el contrato de construcción se acordó que el pago final no sería pagadero hasta que el contratista le sometiera al dueño de la obra una declaración de que se habían satisfecho todas las deudas de nóminas, materiales y equipo relacionadas con el trabajo y por las cuales se podía responsabilizar al dueño. (Cláusula 10.7.4 de las Condiciones generales del contrato para la construcción de obra pública, Apéndice, pág. 73). En cuanto al pago a los subcontratistas, en la Cláusula 6.4.1 se pactó que, al recibo del pago del dueño de la obra, el contratista le pagaría a cada subcontratista una cantidad igual al por ciento de terminación permitido al contratista por el trabajo del subcontratista, menos el por ciento retenido del pago del contratista. (Apéndice, pág. 57). Además, en la Cláusula 10.7.8 se convino que si el pago final del proyecto no se hacía dentro de los noventa (90) días calendario luego que el contratista sometiera todos los documentos necesarios para el pago final, por las partidas mutuamente aceptadas por las partes, se le pagaría al contratista interés al seis por ciento (6%) anual, comenzando el día noventa y uno (91) luego de que el contratista sometiera los documentos requeridos para el pago final y hasta la fecha en que se pague el estimado final.
De acuerdo a las condiciones antes mencionadas, luego de terminado su trabajo en el proyecto Omega le sometería a Prudential una solicitud para pago final por todas las sumas adeudadas a ésta bajo el convenio de subcontrato y que no hubieran sido pagadas previamente. Prudential, a su vez, presentaría a Corrección una solicitud para pago final. Si Prudential no recibía el pago final dentro de los noventa (90) días de haber sometido los documentos requeridos para el pago final, la deuda se declararía vencida y se acumularía un interés de seis por ciento (6%) anual, desde el día noventa y uno (91) de haberse presentado los documentos requeridos para el pago final y extendiéndose hasta la fecha en que se pague el estimado final. Estos mismos términos aplicaban en cuanto al pago final de Prudential a Omega, de acuerdo a lo pactado en el contrato entre ambas.
A base de los documentos presentados por las partes en este caso, hemos determinado que la fecha más temprana en que Omega le reclamó a Prudential la suma de $120,149.98 como cuadre final del proyecto es el 25 de enero de 1999, mediante telefax enviado por el Sr. José Hernández de Omega al Ing. Cruz de Prudential. (Véase, Apéndice al Alegato de Omega, págs. 19-20). Es desde esa fecha que comienza a contar el período de *1097 noventa (90) días que tenía para pagar a Omega la cantidad de $120,149.98. Pasado ese término sin que se pagara la deuda, en el día noventa y uno (91), el 25 de abril de 1999, la deuda advino vencida, líquida y exigible y la misma comenzó a acumular intereses al seis por ciento (6%) anual. Como explicáramos anteriormente, Omega no podía reclamar el pago a Prudential hasta después del vencimiento de la obligación. La reclamación de una cantidad mayor a la debida, como hiciera Omega en este caso, tampoco servía para incurrir en mora. Hasta tanto no hubiera certeza de la cantidad adeudada, la deuda no era líquida, pues faltaba el elemento del retraso del deudor. Concluimos, pues, que la fecha correcta desde la cual comenzaron a acumularse intereses por mora en el presente caso, lo es el 25 de abril de 1999.
En cuanto al interés aplicable a este caso, surge claramente de los acuerdos contractuales entre las partes que el interés pactado por mora fue el seis por ciento (6%). No obstante así haberlo hecho constar en su sentencia del 20 de enero de 2003, la suma por intereses concedida por el tribunal de instancia fue calculada a base del 5.25%. Por tal razón, e irrespectivamente de la fecha desde la cual se calcularon los intereses, el cálculo fue incorrecto. Luego, en la sentencia parcial y orden nunc pro tunc del 16 de junio de 2003, se estipuló que los intereses computados al 5.25% desde el 29 de julio de 1996 hasta el 21 de febrero de 2003 ascendían a la suma de $68,905.99. Esa suma también es incorrecta, pues para llegar a ella, los intereses fueron en realidad calculados al 8.73%.
Como ya mencionáramos, los intereses por mora se pactaron al seis por ciento (6%), por lo que ese es el interés aplicable en este caso. Los intereses adeudados a partir del 25 de abril de 1999 y hasta el 12 de febrero de 2003 ascienden a la suma de $27,432.75, incrementando diariamente a razón de $19.75 a la tasa pactada de 6% hasta su pago total. Se llega a esa cantidad sumando los 250 días del año 1999, los 366 del año 2000, los 365 de los años 2001 y 2002 y los 43 días del año 2003, para un total de 1389 días, a razón de $19.75 de interés diario. En conclusión, la suma total adeudada por Royal a Omega, a nombre de su afianzada Prudential, es de $147,582.73 ($120,149.98 de principal más $27,432.75 de intereses).
IV
Por los fundamentos expresados, se revoca la sentencia y la orden apelada. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de pago de forma compatible con lo aquí resuelto.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Eleana Oquendo Graulau
Secretaria General