Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ASOCIACIÓN DE SALUD PRIMARIA DE PUERTO RICO, INC., CONCILIO INTEGRAL DE SALUD DE LOÍZA, INC.; MIGRANT HEALTH CENTER, INC.; RÍO GRANDE COMMUNITY HEALTH CENTER, INC., Y OTROS<br><br>Apelados<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO; MUNICIPIO AUTÓNOMO DE SAN JUAN, Y OTROS<br><br>Apelantes | KLAN202400264 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: K PE2002-1037 (904)<br><br>Sobre: *Mandamus*, Sentencia Declaratoria y Cobro de Dinero |

Panel integrado por su presidenta, la Jueza Lebrón Nieves,[1] el Juez Rivera Torres y la Jueza Álvarez Esnard.

Álvarez Esnard, jueza ponente

## SENTENCIA

En San Juan, Puerto Rico, a 31 de mayo de 2024.

Comparece ante nos HPM Foundation Inc. ("HPM" o "Apelante") mediante *Apelación*. Nos solicita que revoquemos una *Resolución*[2] emitida el 12 de enero de 2024, notificada el 17 del mismo mes y año, por el Tribunal de Primera Instancia, Sala Superior de San Juan ("foro primario" o "foro *a quo*"). Por virtud de esta, el foro a *quo* estableció las cuantías adeudadas en intereses legales e intereses por mora.

Por los fundamentos que discutiremos a continuación, **modificamos** la *Resolución* aquí apelada, y así modificada se confirma.

---

[1] Mediante Orden Administrativa OATA2024-038 se designa a la Hon. Gloria L. Lebrón Nieves en sustitución de la Hon. Olga E. Birriel Cardona, debido a que dejó de ejercer funciones como Jueza del Tribunal de Apelaciones.
[2] Acogemos el dictamen emitido por el Tribunal de Primera Instancia como una *Sentencia Enmendada Nunc Pro Tunc*, debido a que el nombre no hace la cosa.

**I.**

Con el fin de atender los planteamientos presentados por la parte Apelante, procederemos a hacer un resumen de los hechos procesales más relevantes a la controversia que hoy resolvemos.

El 10 de mayo de 2002, varios demandantes, entre ellos, HPM (antes "Junta del Centro de Salud Comunal Dr. José Belaval, Inc.") incoaron una *Demanda* sobre *mandamus,* sentencia declaratoria y cobro de dinero contra el Estado Libre Asociado, el entonces Secretario de Salud, Johnny Rullán, la Administración de Seguros de Salud ("ASES") y otros codemandados. En síntesis, alegaron que el Municipio de San Juan ("Municipio") les adeudaba el reembolso por los pagos de servicios prestados a beneficiarios de Medicaid entre los años 1997 al 2000, de conformidad con la Ley Federal de Seguro Social, 42 UCS sec. 1396. Arguyeron, además, que los Demandantes, de conformidad con la legislación federal, el Secretario de Salud y el Director de la Oficina de Asistencia Médica de Puerto Rico fallaron en actualizar su plan estatal de Medicaid para implementar la enmienda de la Ley Federal de Seguro Social, que establecía los parámetros de cómo se reembolsarían los costos de los servicios prestados a beneficiarios de Medicaid. Posteriormente, el 24 de agosto de 2002, HPM enmendó su demanda y acumuló como codemandado al Municipio.

Luego de un largo trámite procesal, el 4 de noviembre de 2021, el foro primario dictó *Sentencia Parcial,*[3] en la que determinó que el Municipio le adeudaba a HPM la suma de $9,100,604.00, por los servicios prestados y no pagados a los beneficiarios de Medicaid durante el periodo de 1997 a 2000, incluyendo los intereses legales e intereses por mora. El foro primario desglosó las cuantías de la

---

[3] Apéndice apelación, págs. 65-77.

siguiente manera: principal: $6,048,170.24; intereses legales: $1,990,656.00 y una partida de intereses por mora: $1,061,777.76.

En desacuerdo con tal determinación, el 20 de enero de 2020, el Municipio acudió ante esta Curia mediante recurso de apelación (KLAN202200048). Mediante *Sentencia* emitida el 20 de abril de 2023, esta Curia modificó el dictamen emitido por el foro *a quo*.[4] En esencia, determinamos que no existía controversia sobre que el Municipio tenía una deuda con HPM por los servicios prestados y no pagados, por lo que procedía que se confirmara dicha cuantía establecida por el foro primario. Sobre los intereses por mora y los intereses legales, resolvimos que el foro primario no estableció el cálculo para las cantidades que adjudicó. Por tal razón, devolvimos el caso al foro primario a los fines de que se clarificara cual fue el cálculo utilizado para imponer las aludidas sumas.

Inconforme con dicha determinación, el Municipio acudió ante el Tribunal Supremo mediante *Petición de Certiorari* (CC-2023-0381), la cual fue declarada *No Ha Lugar* mediante *Resolución* emitida el 21 de julio de 2023.[5]

Remitido el correspondiente mandato, el 12 de enero de 2024, notificada el 17 del mismo mes y año, el foro primario emitió la *Resolución* que aquí se cuestiona.[6] De conformidad con la *Sentencia* emitida el 20 de abril de 2023 por esta Curia en el caso KLAN202200048, el foro *a quo* procedió a establecer los cálculos para las partidas de los intereses legales e intereses por mora. En consecuencia, condenó al Municipio a sufragar una cuantía de $7,741,707.82 por concepto del pago adeudado más los intereses legales y por mora.

---

[4] *Íd,* págs. 32-54.
[5] *Íd,* pág. 63.
[6] *Íd,* págs. 1-3.

En desacuerdo, el 31 de enero de 2024, el Municipio presentó *Moción de Reconsideración*, la cual fue declarada *No Ha Lugar* mediante *Resolución* emitida y notificada el 16 de febrero de 2024.

Por su parte, el 18 de marzo de 2024, HPM acudió ante esta Curia a impugnar el dictamen emitido por el foro primario el 12 de enero de 2024 y le imputó la comisión de los siguientes errores:

> Erró el TPI al no aplicar el 6% de interés anual para computar los intereses por mora en que incurrió el MSJ por no pagar oportunamente su deuda con HPM a partir del 1997.

> Erró el TPI al computar los intereses legales adeudados por el MSJ desde la presentación de la demanda enmendada el 30 de agosto de 2002 hasta el 4 de noviembre de 2021, fecha de la Sentencia del TPI, pues no sumó al principal adeudado los intereses moratorios vencidos a la fecha de la Demanda Enmendada antes de hacer ese cómputo, según disponía el Artículo 1062 del Código Civil. También erró el TPI al no aplicar a ese total el interés legal del 6% anual vigente al 30 de agosto de 2002.

> Erró el TPI al computar el total adeudado por el MSJ a HPM en concepto de principal más intereses a la fecha de la Sentencia del 4 de noviembre de 2021.

El 26 de marzo de 2024, emitimos *Resolución* en la que le concedimos un término de treinta (30) días a la parte Apelada para que expusiera su posición en torno al recurso. Oportunamente, el 24 de abril de 2024, el Municipio presentó *Alegato en Oposición Apelación*.

Con el beneficio de la comparecencia de todas las partes, procedemos a exponer la normativa jurídica aplicable al caso de autos.

## II.

### A. *Intereses por mora e intereses legales*

El Artículo 1053 del derogado Código Civil de 1930 dispone que "incurrirán en mora los obligados a entregar o hacer alguna cosa desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento de su obligación". 31 LPRA ant. sec. 3017.[7]

---

[7] En vista de que la controversia de autos se remonta al año 2004, procedemos a aplicar las disposiciones del derogado Código Civil de 1930.

De conformidad con la precitada disposición, el Artículo 1061 del derogado Código Civil de 1930, 31 LPRA ant. sec. 3025, establece la imposición de intereses por mora:

> Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, **consistirá en el pago de los intereses convenidos, y a falta de convenio colectivo, en el interés legal**.
>
> Se considerará como legal el interés que fije la Oficina del Comisionado de Instituciones Financieras; disponiéndose que los intereses se computarán de forma simple y no compuesta.

Para que exista mora por parte del deudor es necesario que se trate de una obligación positiva de dar o hacer, que la obligación sea exigible y líquida y esté vencida, **que el deudor retarde culpablemente el cumplimiento de su obligación y que el acreedor requiera el pago al deudor ya sea judicial o extrajudicialmente.** J. Castán Tobeñas, *Derecho Civil Español, Común y Foral*, 16ta ed., Madrid, Ed. Reus S.A., 1992, Tomo III, págs. 238-240. Los intereses por mora **son considerados como una indemnización independiente de daños y perjuicios, impuesta como penalidad por la demora en el pago**, lo que constituye un derecho personal del acreedor, que puede ser renunciado por este. *Rivera v. Crescioni*, 77 DPR 47, 55-56 (1954). Véase, además, *SLG González-Figueroa v. SLG et al.*, 209 DPR 138, 146 (2022). Sin embargo, **los tribunales de primera instancia pueden imponer intereses por mora como una indemnización en daños y perjuicios aun cuando la parte con derecho a ello no lo haya solicitado.** *Fuentes v. Hull Dobbs Co.,* 88 DPR 562, 571 (1963).

Por su parte, el Artículo 1062 del Código Civil de 1930, 31 LPRA ant. sec. 3025, dispone que "[l]os intereses vencidos devengan el interés legal desde que son judicialmente reclamados, aunque la obligación haya guardado silencio sobre este punto". Este tipo de

interés se le conoce como anatocismo, que es la acumulación de "los intereses vencidos y no pagados al capital, de manera que produzcan nuevos intereses." J. Puig Brutau, *Fundamentos de Derecho Civil*, Tomo I, Vol. II, 4ta ed., Barcelona, Bosch, 1988, pág. 350.

Nuestra jurisprudencia no ha establecido con exactitud el alcance de los intereses anatocísticos. Aunque el anatocismo es repudiado en nuestra jurisdicción, **para que produzca sus efectos el pago de intereses sobre intereses debió haberse pactado previamente.** Véase *Knights of Columbus Bldg. Ass'n. of San Juan, Puerto Rico v. Arcilagos*, 45 DPR 92 (1933); *Quiñones v. Sucesión Villamil*, 32 DPR 479, 498 (1923). Según el Profesor Guaroa Velázquez, el anatocismo está permitido en el Código Civil, **pero está subordinado a condiciones rigurosas para proteger al deudor.** Véase Guaroa Velázquez, *Las Obligaciones según el Derecho Puertorriqueño,* Equity Publishing, págs.163–64. El Art. 1062 del Código Civil de 1930, *supra*, permite que los intereses vencidos devenguen el interés legal tan sólo desde que son reclamados judicialmente. Ahora bien, <u>**esto necesariamente se refiere a los intereses pactados y vencidos, no a los impuestos por determinación judicial.**</u> Véase *Knights of Columbus Bldg. Ass'n. of San Juan, Puerto Rico v. Arcilagos, supra*; *Quiñones v. Sucesión Villamil, supra*.

Asimismo, la Regla 44.3 de Procedimiento Civil, *supra*, R.44.3, regula lo concerniente a la fijación del interés legal tanto post sentencia como por temeridad". *Gutiérrez v. A.A.A.*, 167 DPR 130, 136 (2006). En particular, la aludida Regla establece lo siguiente:

> (a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras, y que esté en vigor al momento de dictarse la sentencia, **en toda sentencia de dinero, a computarse sobre la cuantía de la sentencia que ordena el pago desde la fecha en que se dictó y hasta que ésta sea satisfecha,** incluso las

costas y los honorarios de abogado. El tipo de interés se hará constar en la sentencia. La Junta fijará y revisará periódicamente la tasa de interés por sentencia, tomando en consideración el movimiento en el mercado y con el objetivo de desalentar la presentación de demandas frívolas, evitar la posposición irrazonable en el cumplimiento de las obligaciones existentes y estimular el pago de las sentencias en el menor tiempo posible. (Énfasis nuestro).

El interés post sentencia se refiere al tipo de interés que se impone a favor de la parte victoriosa en **todas las sentencias que ordenen el pago de dinero.** Éste se computa sobre la cuantía de la sentencia, incluyendo las costas y los honorarios de abogados, y se fija desde la fecha en que se dicte la sentencia hasta que ésta se satisface. *Zequeira v. C.R.U.V.*, 95 DPR 738, 741 (1968). **Su imposición es mandatoria a toda parte perdidosa sin distinción alguna.** *Municipio de Mayagüez v. Rivera*, 113 DPR 467, 470 (1982); *P.R. Ame. Ins. Co. v. Tribunal Superior*, 84 DPR 621, 622-623 (1962). Véase, además, *Gutiérrez v. A.A.A., supra*, págs. 136-137.

Nuestro ordenamiento ha establecido que el interés legal postsentencia tiene como fin "evitar la demora irrazonable en el cumplimiento de las obligaciones declaradas judicialmente por sentencia, y estimular su pago en el menor tiempo posible." En *SLG González-Figueroa v. SLG et al, supra*, nuestro Máximo Foro expresó lo siguiente:

> [e]l derecho a recobrar los intereses postsentencia es estatutario u opera por disposición de ley. En consecuencia, forman parte de la sentencia y pueden ser recobrados, aunque no se mencionen expresamente en el dictamen. Este está disponible para toda parte victoriosa, es decir, **su imposición es obligatoria, sin distinción de clase alguna y con independencia de si la parte contraria actuó o no con temeridad**. <u>**Se computa sobre la cuantía de la sentencia, incluidas las costas y los honorarios de abogado, desde la fecha en que se emita la sentencia hasta su satisfacción.**</u> (Citas omitidas). (Énfasis y subrayado nuestro).

### III.

En su primer señalamiento de error, HPM nos alega que erró el foro primario al hacer el cómputo de los intereses por mora. En

particular, sostiene que el interés aplicable es de 6%, según dispone el Artículo 1061 del Código Civil de 1930, *supra.* A su vez, arguye que no se allanó al interés establecido por la Oficina del Comisionado de Instituciones Financieras ("OCIF"), como dispone la *Resolución* que aquí se cuestiona.

En cuanto al segundo y tercer señalamiento de error, el Apelante argumenta que el cómputo sobre los intereses legales es uno erróneo, toda vez que el foro primario debió sumar los intereses por mora que se habían acumulado a la fecha de la presentación de la demanda, de conformidad con el Art. 1062 del Código Civil, *supra.* Añade que el foro primario erró al no computar los intereses legales desde la presentación de la demanda hasta la fecha de la *Sentencia Parcial* dictada el 4 de noviembre de 2021. Finalmente, sostiene que el interés legal utilizado por el foro primario era de 1.50%, en vez del 6% que dispone el Art. 1062 del Código Civil, *supra.*

Por su parte, el Municipio expone que existe controversia real sobre la deuda existente entre las partes, lo cual imposibilita que el foro primario imponga intereses por mora. Añade que tampoco proceden los intereses legales, puesto que estos proceden por acuerdo entre las partes, lo cual no existe para el periodo de 1997 a junio de 2000.

En la *Resolución* que aquí se cuestiona, el foro primario estableció el cómputo de los intereses adeudados por el Municipio, de conformidad con lo ordenado por esta Curia mediante *Sentencia* en el caso KLAN202200048 del 20 de abril de 2023. No obstante, tanto HPM como el Municipio, cuestionan su procedencia y el cómputo establecido por el foro *a quo*.

En cuanto a la imposición de intereses por mora, somos del criterio de que el foro primario podía imponer, como indemnización, una partida en concepto de los intereses por mora. Contrario a lo que alega el Municipio, la deuda de dicha entidad municipal es una

líquida y exigible. El ordenamiento ha establecido que para que exista mora por parte del deudor es necesario que se trate de una obligación positiva de dar o hacer, que la obligación sea exigible y líquida y esté vencida, **que el deudor retarde culpablemente el cumplimiento de su obligación y que el acreedor requiera el pago al deudor ya sea judicial o extrajudicialmente.** J. Castán Tobeñas, *op cit.*

El presente caso ha sido uno altamente litigado entre las partes desde el año 2002. Mediante *Sentencia* final y firme emitida por esta Curia el 20 de abril de 2023, en el caso KLAN202200048, fue resuelto que no existía controversia sobre la cuantía adeudada por el Municipio a HPM, lo cual citamos:

> El MSJ alega que existe una controversia real sobre la cantidad adeudada debido a que se debía determinar si procedía la deducción de los Fondos 330 *("Grants")* de la suma total de la deuda. No obstante, el expediente demuestra que el foro primario refirió la controversia sobre los *grants* y las cuantías a pagarse al Comisionado Especial, quien realizó varios informes a lo largo de este litigio. En el 2011, el Comisionado Especial emitió un informe que comprendía los años 2001-2006 para todos los centros. Dicho informe se incorporó como referencia al informe emitido en el 2012, el cual comprendía el cómputo del pago de los servicios prestados para los años 1997 a 2000. En el Informe de 2011, el Comisionado Especial resaltó que los Fondos 330 se dividen de tres maneras:
>
> 1) Fondos Operacionales para cubrir servicios de salud a áreas geográficas específicas.
> 2) Fondos para apoyar el periodo inicial de un nuevo programa de servicios de salud.
> 3) Fondos dirigidos a estudios de desarrollo de nuevos métodos o mejorar los métodos existentes de servicios de salud.
>
> El Comisionado Especial estimó que procedían las deducciones de la siguiente manera:
>
> 1) Aquellos Fondos 330 recibidos bajo el inciso (1) se pueden deducir de WAP cuando son recibidos para beneficio de los pacientes Medicaid;
> 2) Aquellos Fondos 330 recibidos bajo el inciso (2) nunca se pueden deducir de WAP;
> 3) Aquellos Fondos 330 recibidos bajo el inciso (3) siempre se pueden deducir con WAP.
>
> En vista de lo anterior, el Comisionado Especial determinó que la parte que reclamaba el descuento de

fondos debía evidenciar que, en efecto, los fondos se habían recibido bajo el inciso (1). Es decir, que los fondos fueron recibidos para beneficio de los pacientes Medicaid. Del Informe del Comisionado Especial se desprende que **el MSJ no enmendó sus cálculos para evidenciar que los Fondos 330 fueron fondos en beneficio de pacientes Medicaid, según dispuesto en el inciso (1).** *"MSJ no enmendó sus cálculos, para producir evidencia que los créditos reclamados por los "grants" federales obedecían a fondos para beneficio de pacientes Medicaid. Por lo que este Comisionado se ve obligado a denegar el crédito solicitado en su totalidad."* Por tal razón, el Comisionado Especial recomendó no deducir los Fondos 330 de la cuantía adeudada a HPM.

Sobre la cantidad adeudada, el Informe del Comisionado Especial establece lo siguiente:

Las partes prepararon su metodología alterna para preparar sus cómputos. [...]. Básicamente, se determina el costo por paciente, se multiplica por el número de visitas, se ajusta por el por ciento de pacientes Medicaid servidos por Belaval [HPM]. Este cálculo representa los costos de pacientes de Medicaid. Al mismo se le restan los pagos recibidos por Belaval [HPM], también ajustados por el por ciento de pacientes de Medicaid servidos por Belaval [HPM]. La diferencia es la cantidad adeudada por el MSJ.

Belaval [HPM] sometió su cómputo, basándose en la metodología alterna. MSJ presentó sus objeciones. **En su escrito MSJ determinó que los costos de Belaval para los servicios de Medicaid para el periodo 1997-2000 ascendieron a $16,855,253.44. MSJ admite además haber pagado, luego del ajuste porcentual, $10,807,083.20, por concepto de los servicios provistos por Belaval a pacientes de Medicaid**.

Según se menciona en el aludido Informe, el MSJ admitió que los servicios prestados ascendieron a $16,855,253.44 y que pagó una suma de $10,807,083.20. Siendo así, la deuda del MSJ con HPM, sin la deducción de los *grants*, es de $6,048,170.24. Como bien resolvió el foro primario, la controversia sobre la cantidad adeudada fue resuelta cuando el Municipio tuvo la oportunidad de cuestionar los cálculos para calcular la deuda y admitió la cantidad que debía. **"Al estos aceptar una cantidad de dinero adeudado y HPM aceptar tal deuda, no existe controversia sobre esta".** Además, el MSJ no puede alegar que existe controversia sobre la deuda, pues desde 2012 el Comisionado Especial había establecido que no se presentó evidencia sobre que era beneficiario del descuento de los *grants*. (Énfasis en original).

De una lectura de lo antes citado, no nos alberga duda de que no le asiste la razón al Municipio en su alegación de que no proceden los intereses por mora, por no existir una deuda líquida y exigible. Todo lo contrario. La deuda entre las partes es una líquida y exigible,

la cual genera intereses por mora, en la medida que el Municipio haya incumplido con su pago.

Ahora bien, nos corresponde determinar si el cálculo del interés establecido por el foro primario es correcto. En la *Resolución* impugnada, particularmente en la nota al calce número 1, el foro *a quo* estableció lo siguiente: "Aclaramos que los Demandantes [HPM] se allanaron a que se utilizara la tasa de interés establecida por la OCIF. Véase la página 17 de la *Solicitud de Sentencia Parcial a favor de HPM y en contra del MSJ.*"

Luego de revisar la *Solicitud de Sentencia Parcial a favor de HPM y en contra del Municipio de San Juan Regla 42.3 de Procedimiento Civil,* presentada por el HPM ante el foro primario el 12 de mayo de 2021, no albergamos duda de que HPM se allanó a que se aplicara el interés establecido por la OCIF para el cálculo de los intereses por mora. El aludido documento expone lo siguiente:

> 27. Todo lo anterior significa que HPM tiene derecho a cobrar del MSJ intereses moratorios a partir de cada año en que el MSJ incurrió en mora (desde el año 1997 hasta el año 2000) hasta la presentación de la Demanda Enmendada. HPM entiende que el interés legal aplicable a la deuda del MSJ es el interés legal del 6% dispuesto en el CCPR 1930. El MSJ ha alegado que el interés moratorio aplicable es el establecido por OCIF. La realidad es que el interés legal por mora no se encuentra regulado expresamente por OCIF. **No obstante, para evitar que cuál es la tasa de interés aplicable se convierta en otra controversia, <u>HPM está dispuesta a aceptar que se aplique el interés establecido por OCIF, computado a partir de cada año en que el MSJ incurrió en mora</u>** [...].[8] (Énfasis y subrayado nuestro).

A tono con lo anterior, determinamos que HPM no puede cuestionar el porcentaje de interés establecido por el foro primario para los intereses por mora. En su escrito, se allanó a que el foro primario aplicara el interés establecido por la OCIF e incluyó una tabla con el cálculo de los intereses adeudados, la cual fue acogida

---

[8] Cabe destacar, que la *Resolución* aquí cuestionada establece el mismo cálculo de los intereses por mora propuesto por HPM en su *Solicitud de Sentencia Parcial a favor de HPM y en contra del Municipio de San Juan Regla 42.3 de Procedimiento Civil,* presentada ante el foro primario el 12 de mayo de 2021.

por el foro primario en su *Resolución.* Por tanto, resolvemos que el primer error no se cometió.

En cuanto al segundo y tercer señalamiento de error, HPM cuestiona el cálculo establecido por el foro primario para los intereses legales. En particular, sostiene que los intereses legales fueron impuestos al amparo del Art. 1062 del Código Civil de 1930, *supra,* y que la cuantía es errónea, por los siguientes fundamentos: 1) utilizó erróneamente la fecha de 12 de mayo de 2021 para establecer el cálculo, en vez de utilizar la fecha en que se dictó la *Sentencia Parcial* el 4 de noviembre de 2021; 2) no se sumaron los intereses por mora, para computar los intereses legales; y 3) el foro primario utilizó el 1.5% para calcular los intereses, en vez del 6% aplicable a esta reclamación.

Por su parte, el Municipio arguye que dicha partida no procede en derecho, puesto que para imponer intereses legales al amparo del Art. 1062 del Código Civil de 1930, *supra,* debe existir un pacto entre las partes, lo cual no existía para los años 1997 a 2000. Le asiste la razón.

Surge de la *Sentencia* dictada por esta Curia en el caso KLAN202200048, la cual confirmó la *Sentencia Parcial* emitida por el foro primario del 4 de noviembre de 2021, que no existía controversia sobre que las partes no suscribieron contrato escrito para los años 1997 a 2000. La precitada *Sentencia* de este Tribunal estableció lo siguiente: "[p]ara el periodo de 1997 a junio de 2000, no existía un contrato escrito entre el Municipio y HPM".[9] Es decir, las partes no acordaron por escrito los términos de los servicios pactados, mucho menos, si el incumplimiento con los pagos devengaría intereses compuestos.

---

[9] Cabe destacar que la *Sentencia* emitida por el foro primario el 4 de noviembre de 2021, la cual fue confirmada por esta Curia en el caso KLAN202200048 y es final y firme, que la obligación de pago del Municipio a HPM surge de las disposiciones de la Ley de Medicaid y no de un contrato. Véase Apéndice apelación, pág. 75.

Nuestro ordenamiento ha sido claro en establecer que el pago de intereses compuestos establecido en el Art. 1062 del Código Civil de 1930, *supra,* debe estar expresamente pactado. En ausencia de este acuerdo, no procede que se impongan intereses legales sobre los intereses vencidos. Véase *Knights of Columbus Bldg. Assí n. v. Arcílagos, supra*; *Quiñones v. Sucesión Villamil, supra.* Tal como estableció el Municipio, dicha partida no procede en derecho. Aun cuando la *Resolución* emitida por el foro primario no es específica sobre los intereses legales, entendemos que el foro primario impuso los intereses del Art. 1062 del Código Civil de 1930, *supra,* conforme fueron propuestos por HPM en la *Solicitud de Sentencia Parcial a favor de HPM y en contra del Municipio de San Juan Regla 42.3 de Procedimiento Civil,* presentada ante el foro primario el 12 de mayo de 2021. Siendo así, resolvemos que dicha partida no procede.

Ahora bien, notamos que el foro primario no concedió a favor de la parte aquí Apelante los intereses legales postsentencia, según ordena la Regla 44.3 de Procedimiento Civil, *supra.* Este derecho de HPM a recobrar los intereses postsentencia es estatutario y opera por disposición de ley. *González Ramos v. Pacheco Romero, supra.* La precitada Regla dispone lo siguiente:

> (a) Se incluirán intereses al tipo que fije por reglamento la Junta Financiera de la Oficina del Comisionado de Instituciones Financieras, **y que esté en vigor al momento de dictarse la sentencia, en toda sentencia de dinero, a computarse sobre la cuantía de la sentencia que ordena el pago desde la fecha en que se dictó y hasta que ésta sea satisfecha,** incluso las costas y los honorarios de abogado. El tipo de interés se hará constar en la sentencia. […]. (Énfasis nuestro).

En vista de que ha sido previamente resuelto que el Municipio es deudor de HPM, procede la imposición de los intereses post sentencia establecidos en la Regla 44.1 de Procedimiento Civil, *supra.* Por lo cual, determinamos que procede la imposición de los intereses post sentencia desde el 4 de noviembre de 2021, fecha que se dictó *Sentencia* ordenando el pago a HPM hasta que se satisfaga

la misma. Dichos intereses se computarán al 4.25% establecido por la OCIF a la fecha de dictada la *Sentencia.*

**IV.**

Por los fundamentos expuestos, **modificamos** la *Resolución* emitida por el foro primario, y así modificada, se confirma.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones